### SOUTHWESTERN BUS CO v NORTH OLMSTED (village) et

Ohio Appeals, 8th Dist, Cuyahoga Co

No 12445.  Decided May 2, 1932

58

Messrs. Tolles, Hogsett and Ginn, Cleveland, for plaintiff.
Messrs. Day & Day, Cleveland, and Guy R. Wheeler, Esq., Cleveland, for defendants.

LEVINE, P.J.

Defendant files its motion asking that the supplemental petition be stricken from the record, on the ground that it alleges new matter which was not in existence at the time of the filing of the original petition in the Common Pleas Court.

We are of the opinion that the motion is not well taken, for the reason that when a case is appealed to the Court of Appeals this court has the same power over the pleadings, including amendments and supplemental pleadings as does the court where the action was originally filed. The test in all such cases is: Would a particular pleading sought to be filed be allowable and proper if offered in the Common Pleas Court where the action was originally filed? Whatever is proper in the Common Pleas Court is likewise proper and allowable in the Court of Appeals. This supplemental petition would unquestionably be considered allowable and proper had it been offered in the Common Pleas Court, and it is likewise within the power of the Court of Appeals to permit such supplemental petition.

The defendant filed a demurrer to the plaintiff's petition attacking the capacity of the plaintiff to maintain this suit. This question we find is debatable. There is authority to the effect that the holder of a certificate of public convenience and necessity is regarded merely as the holder of a personal license and that he is not to be regarded as vested with a property right. There is likewise authority to the effect that when, by reason of the granting of such certificate of public convenience and necessity the holder entered into the purchase and maintenance of equipment and had incurred large expenditures, that a court of equity would protect him against irreparable injury when such injury cannot be measured adequately in damages.

We are of the opinion that the latter view is the sound view and more in consonance with the demands of the modern age. Since courts of equity prefer to deal with substance rather than form, and have since their establishment sought to operate as a shield of defense against the impairment of rights where the law courts afforded no adequate remedy, it often becomes necessary that it employ its instrumentalities for the protection of substantial rights, even though there be no precedent for it. When we analyze the truth of the situation, it must be conceded that the plaintiff company has, by reason of the granting to it of the certificate made substantial expenditures and thereby acquired substantial property rights, and it therefore must follow that if such rights as it acquired are being threatened by unauthorized and unlawful acts on the part of the defendant, that a court of equity would and should grant an effective remedy.

The defendant filed an answer containing two defenses. As its first defense it sets forth, in substance, that the predecessor of the plaintiff company, namely, The Cleveland Southwestern Railway and Light Company, operated electric railroad service

through the Village of North Olmsted, whereby the inhabitants of that Village were given transportation service to and from the City of Cleveland; that upon the abandonment of said electric railway service, defendant village, by action of its council, established a motor bus service for the purpose of rendering transportation service to the inhabitants of North Olmsted within the limits of the Village and the City of Cleveland; that the said bus operation has been carried on under the direction of Charles A. Seltzer, as Mayor, in conjunction with the council of said Village; that defendant Village and the Village of Fairview have entered into an agreement whereby it is agreed that the Village of North Olmsted will provide transportation service by its municipally owned and operated bus line within the Village of Fairview and between the Village of Fairview and the City of Cleveland, and the defendant Village is now furnishing such transportation service to those who desire the same.

The answer further proceeds to specify the route along which the operation is proceeding and further answering the defendants deny all and singular the allegations contained in the petition not heretofore expressly admitted to be true.

The second defense is in the nature of a demurrer as it alleges that the facts stated in the petition are insufficient to constitute a cause of action in the plaintiff.

The facts involved are set forth in an agreed statement of facts supplemented by oral testimony taken before a referee. The oral testimony relates solely to the question of the effect of the defendants' alleged unauthorized acts upon the plaintiff's property rights.

Since it is admitted in the agreed statement of facts that the plaintiff is suffering a loss in gross revenue in a substantial amount, we may view this case upon the basis of the agreed statement of facts. The facts in outline, therefore, are that the plaintiff is a transportation company rendering service between Fairview Village and Cleveland and between other points on its route under the jurisdiction of the public utilities commission.

Since March 1, 1931, the defendant Village has been carrying on a municipal bus service which it owns and operates and which it inaugurated in order to provide transportation service between the Village of North Olmsted and the City of Cleveland and other intermediate points. Until January, 1932, its operation was limited to serving those persons who desired to go into or come out of the Village of North Olmsted.

Shortly after that time, by virtue of a contract with the village of Fairview, it has been rendering a common carrier service not only to persons whose ride originates or begins in the defendant Village, but between all other points on its route except certain points in the City of Cleveland. It is, therefore, rendering transportation service to the inhabitants of Parkview Village and of Fairview Village and to those who desire to ride between those villages and the City of Cleveland. For a considerable time the plaintiff has been operating motor transportation service from the westerly limits of Fairview Village pursuant to an agreement made with that Village which has since expired. Plaintiff Company has continued to render that same transportation service and therefore is operating its motor buses from Fairview Village into the City of Cleveland, and prior to January 4, 1932 was furnishing that service without competition. Since that date the defendant Village has established the competing service between the Village of Fairview and Cleveland as well as between the Village of Parkview and Cleveland, and between Cleveland and that part of plaintiff's route which operates through North Olmsted.

It also appears from the agreed statement of facts that the plaintiff company has a substantial investment in this particular transportation business. It is claimed by it that it and its predecessors have been rendering this service for eight years and that it has sufficient equipment to render service along its route.

The agreed statement of facts further shows that the defendant Village had five busses in operation with an average seating capacity of 25 passengers prior to the time the defendant Village entered into its contract with the Village of Fairview, and that said busses made 25 round trip runs from the Village of North Olmsted to the Public Square of the City of Cleveland each day.

The agreed statement of facts further shows that at approximately the time of entering into a contract between the defendant and the village of Fairview the defendant village acquired two additional busses, one of which was necessary to meet the increased transportation demands of the defendant village, and the other of which was required for the purpose of augmenting the transportation service rendered the village of Fairview, and that all of its busses were used in carrying passengers between all points served by the transportation service rendered by the village. Since the inauguration of service for passengers the defendant village has added ten runs to its schedule making

the total number of runs thirty-five as compared with twenty-five runs which were made prior to the effective date of said contract.

The power of the defendant village to own and operate this transportation service is derived from §§ **four and six of Article 18 of the Ohio Constitution.** Section 4 is as follows:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the products or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

, Section 6 is as follows:

"Any municipality, owning or operating a public utility for the purpose of supplying the service or product thereof to the municipality or its inhabitants, may also sell and deliver to others any transportation service of such utility and the surplus product of any other utility in an amount not **exceeding in either case fifty percentum of the total service or product supplied by such utility within the municipality.**

It is contended by plaintiff that the only authority which defendant village has is to furnish to others transportation service in an amount not exceeding fifty percent of the total service supplied within the municipality; that therefore in determining the authority of the defendant village, the basis for the computation must be service within the municipality; that the very intent and purpose of Article 18 was to limit the service furnished to others, only in such cases in which there is some relationship to the service furnished within the municipality itself; that therefore in determining the authority of the defendant village, the basis for the computation must be the service **within the municipality**; and that it was the intention of the constitutional limitation to make mileage alone the basis of computation.

It is argued that since it appears in the agreed statement of facts that the route of the defendant is 17.8 miles in length, of which six miles only are within the defendant municipality, that it becomes apparent

that almost 200 per cent of the mileage within the municipality is situated outside thereof. Reference is also made to another route operated by the defendant village which on the basis of mileage would constitute four hundred percent of that within the limits of the village.

Referring to the number of passengers carried by the busses so operated by the defendant village, it is claimed that there are more passengers carried whose route is wholly outside the village limits than there are those whose rides extend into it.

The defendant contends that the plain and ordinary meaning of the word "service" as used in §6, **Article 18 of the Ohio Constitution** is to measure and determine the same by the standard of equipment and facilities; that the only sound and reasonable standard is that of equipment and facilities and the employment thereof, in other words, the number of runs afforded; that the municipal bus line furnishing service to the passengers supplies equipment and facilities plus the labor of operation.

There are no decisions construing that portion of §6, **Article 18 of the Ohio Constitution** which permits the municipality "to sell and deliver to others any transportation service of such utility in an amount not exceeding fifty percent of the total service or product supplied by such utility within the municipality."

We are of the opinion that neither the test of mileage nor the number of passengers carried is the proper unit of measurement to be employed in determining fifty percent of the service. Courts must take judicial notice that modern transportation equipment has in many instances eliminated space; that communities in such proximity to each other as are North Olmsted Falls and the City of Cleveland are so closely connected with each other as to be interdependent. Were the court to adopt the standard of mileage in determining the "fifty percent of service" as used in the Constitution, it would impose an arbitrary provision which would destroy the very purpose of the establishment by the village of North Olmsted of the Motor Bus Service which was principally to provide means of communication between the village of North Olmsted and the City of Cleveland, as it must follow that if mileage is the test, the village would have no right at all to operate a bus line between its limits and the City of Cleveland.

We hold that equipment and facilities plus the human agencies which are reasonably necessary to operate them constitute public utility service, and that measured by this test the village of North Olmsted

is operating its transportation service within the powers granted to it by the Constitution of Ohio. In the matter of equipment it only added two additional busses to the other five which were in operation prior to entering into a contract between the village of North Olmsted and the Village of Fairview. As to the number of runs we find that prior to the entering into the contract between the Village of North Olmsted and the Village of Fairview, the defendant village supplied 25 runs; that since entering into the contract it increased the runs so as to number 35.

It is our conclusion that the Village of North Olmsted has not exceeded its constitutional power either in the establishment of the transportation service or in the manner of operating the same.

The petition of the plaintiff for an injunction will, therefore, be denied and a decree entered accordingly.

WEYGANDT, J, concurs.
VICKERY, J, not participating.